HARRY KLASS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 3, 1913.

1. NEGLIGENCE: Street Railways: Sudden Jerk. Plaintiff sued to recover for personal injuries, sustained by his wife, while alighting from the defendant's street car. The plaintiff's wife, and their son, twelve years old, were passengers on an eastbound electric street car of defendant, on Eighteenth street. When the car stopped at a regular stopping place on the west side of Prospect avenue, plaintiff's wife and her son proceeded to alight and take a southbound car. While the wife was in the act of alighting, the car suddenly started forward and threw her to the pavement, and injured her. *Held*, that the demurrer to the evidence was properly overruled.

2. EVIDENCE: Res Gestae: Conversation. When a conversation with an injured person is offered in evidence, which relates to a fact that is not a part of the *res gestae*, it is inadmissible.

Appeal from Jackson Circuit Court.—*Hon. E. E.*
*Porterfield,* Judge.

AFFIRMED.

*John H. Lucas* for appellant.

*Joseph P. Fontron* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages
sustained by him in consequence of an injury to his
wife which he alleges was caused by negligence of de-
fendant. The answer is a general denial. Plaintiff
prevailed in the circuit court and the cause is here on
the appeal of defendant.

The injury occurred July 17, 1909, at 10:30 p. m.,
at the intersection of Eighteenth street and Prospect
avenue in Kansas City. The evidence of plaintiff
tends to show that his wife and their son, who was
twelve years old, were passengers on an eastbound
electric street car operated by defendant on Eighteenth
street; that when the car stopped at a regular stop-
ping place on the west side of Prospect avenue, they
proceeded to alight for the purpose of transferring to
a southbound Prospect avenue car and that while Mrs.
Klass was stepping from the rear vestibule to the first
step and was holding to the handhold, the car sud-
denly started forward and threw her to the pavement.

The evidence of defendant is to the effect that the
car stopped to receive and discharge passengers at
the west side of Prospect avenue and remained sta-
tionary until after Mrs. Klass had fallen and had been
assisted by the conductor and a passenger to the Pros-
pect avenue car. The conductor states that Mrs. Klass
alighted in safety and started to walk to the sidewalk
when she stepped into a hole in the pavement, turned
her ankle and fell. Defendant insists that the court
erred in refusing its request for a peremptory instruc-

tion and the principle ground of the contention is that the evidence of plaintiff relating to the cause of the injury is so weak and contradictory and so opposed to the plain physical facts of the occurrence that it should be rejected as insufficient to raise an issue of fact.

On account of her disqualification as a witness Mrs. Klass did not testify and the evidence of plaintiff on the subject of the cause of her fall consisted entirely of the testimony of the boy who states he accompanied his mother and witnessed her fall. According to his testimony he preceded his mother and alighting just as the car was coming to a dead stop, turned around and watched her. At that time she was in the vestibule approaching the steps and when she was about to take the first step and was holding with one hand to a handhold (the witness could not remember which hand), the car started forward with a jerk and ran across the street before stopping. The sudden and unexpected starting of the car caused Mrs. Klass to pitch forward and fall to the pavement. We quote from the cross-examination:

"Q. Where was your mama when you got off? A. She was inside of the car going to get off.

"Q. Was she clear inside of the car or had she gotten into the vestibule when you got off? A. She was just about into the vestibule.

"Q. When you got off? A. Yes, sir.

"Q. Did you jump off of the car? A. No, sir; I stepped off.

"Q. Were you holding to anything when you stepped off? A. Yes, sir.

"Q. What? A. Them there things on the side of the car.

"Q. With which hand? A. With this hand (indicating).

"Q. That is your left hand? A. Yes, sir.

"Q. Did you see your mama when she came down on the step of the car? A. Yes, sir.

"Q. How is that? A. Yes, sir.

"Q. Which was was she facing? A. She was facing the east.

"Q. Which way did she fall? A. Kind of out—straight out.

"Q. Towards the south? A. Yes, sir.

"Q. And she didn't fall back towards the west at all? A. No, sir.

"Q. And how did she fall—on her face or back or how? A. She fell and her foot doubled under her.

"Q. Yes, but I don't know whether you understand me or not. When she fell did she fall forward this way (indicating), or backward or to one side, or how was it? A. She kind of fell forward.

"Q. Fell forward on her face and the front part of her body? A. Yes, sir; she didn't hurt her face.

"Q. She didn't hurt her face? A. No, sir; just her side and foot and leg.

"Q. Did you see what part of the body struck the pavement when she fell? A. Her right side.

"Q. How far were her feet from the steps of the car as she lay there on the ground? A. About—I don't know how far. Well, it threw her out?

"Q. If you don't know in feet, why, point out something here to tell us about how far her feet were away from the car step as she lay on the ground. A. I guess about that far (indicating).

"Q. Do you know about how far that is? A. That is about two or three feet.

"Q. And you say what part of her body struck the ground first? A. Her right side.

"Q. Well, did her feet strike the ground first or not? A. I don't know, I didn't notice that.

"Q. You didn't notice? A. I know when she fell she fell on her side.

"Q. Which foot was it doubled up under her? A. Her right one.

"Q. And as she lay there on the ground where was the street car? A. Over across on the other side of the street."

Of this evidence, counsel for defendants says in his brief: "The testimony is physically impossible. A person on the south side of an eastbound car who is facing east and standing on the step when the car stops will invariably be thrown back towards the west if the car starts east again suddenly. These facts are not disputable, hence we again challenge the only testimony upon which plaintiff could have recovered. The request for a peremptory charge should have been given in view of the fact that the plaintiff's right to recover was based solely on the testimony of this one witness as to the way the accident happened."

Of course we are not bound to give any consideration to the testimony of a witness that is repugnant to undisputed and indisputable physical facts and laws, but we do not regard the testimony of this witness as falling under that rule. Counsel for defendant assert that in the position occupied by Mrs. Klass, as described by the witness, the certain effect of 'a sudden forward start of the car would have been to throw her westward against the rear end of the vestibule and not forward, but it must be borne in mind that several opposing and mutually modifying forces were brought into action, viz.: First, the jerk of the car which, if not interfered with, would have thrown the woman in the opposite direction; second, the force produced by the movement of Mrs. Klass in leaving the car which, at the time, was exerted in a direction at right angles to that of the motion of the car; third, the resistance to the suddenly introduced force offered by the hand-hold and, fourth, the involuntary effort a person will make to regain his equilibrium under such circumstances. Obviously the direction given the falling body of a person who has some means and opportunity for resistance to the major force would vary in differ-

ent instances and would depend on the relative strength of the interacting forces. It would not do for us to indulge in a dogmatic conclusion and to pronounce that to be impossible which not only is possible but is well within the scope of the reasonable results of the forces brought into play. The question of whether or not the testimony of the witness is consistent with physical fact and law in this instance should be regarded as one of fact for the jury to determine.

Point is made that the boy did not accompany his mother and, therefore, was not at the scene of the injury, but since that point rests on contradicted evidence of defendant, we regard it as having been removed from the case by the verdict of the jury.

Further it is argued that there is a material variance between the allegations of the petition which charge that Mrs. Klass had "passed through the rear vestibule and had stepped down upon the step of said car" and her proof, which shows that she was stepping to the first step. The variance is so slight and it is so manifest that defendant could not have been misled or injured by it that we think it should not be regarded as violative of the rule which requires a plaintiff to prove that his injury occurred in the manner specified in his petition. The gist of the pleaded cause is that Mrs. Klass was injured by the negligent starting of the car while she was in the act of passing down the rear steps and her proof tends to support such averment. An immaterial variance between allegation and proof is no ground for a reversal. The demurrer to the evidence was properly overruled.

Defendant complains of the ruling of the court in sustaining an objection to evidence of a conversation between the conductor and Mrs. Klass relating to the cause of the injury. The alleged conversation occurred after Mrs. Klass had been taken over to the Prospect avenue car and while she was being helped on board. For the reasons stated in the recent opin-

ions of this court in Hooper v. Insurance Co., 166 Mo. App. 209 and Jewell v. Manufacturing Co., 166 Mo. App. 555, we hold the evidence related to a fact that was not a part of the *res gestae* and, therefore, was inadmissible.

Other objections to the rulings on evidence have been examined and are pronounced to be without merit. The objection to plaintiff's instruction on the measure of damages must also be ruled against defendant since we find the instruction stated the rule. [Brown v. Railway, 31 Mo. App. l. c. 673; Cullar v. Railway, 84 Mo. App. 347; Furnish v. Railway, 102 Mo. 669.] The suggestion that the jury were not restricted to damages resulting to plaintiff from the injury in controversy rests upon a strained interpretation of the instruction. We must assume that the jury were gifted with ordinary intelligence and understanding and we do not perceive any ground on which a reasonable mind might conclude that the scope of the jury's consideration was enlarged to include damages not caused by the injury.

Finally it is urged that the verdict which was for $850 was excessive. Mrs. Klass is a heavy woman, forty-five years old. Her chief injury was a severe sprain of her right ankle. She was confined to her bed seven or eight weeks, was under a physician's care over three months and at the time of the trial, which was almost two years after the injury, had not entirely recovered. Plaintiff expended over fifty dollars for medical services and servant hire. He is not in affluent circumstances and he and the son performed much of the domestic service which the mother was unable to render. It is said a bad sprain is worse than a broken bone and considering the weight and age of the injured woman, the claim that the injury was serious and resulted in great damage to plaintiff does not appear unreasonable. We hold the assessment of damages was within proper limits and that the ver-

dict cannot be said to have been the product of passion or prejudice.

The judgment is affirmed. All concur.